IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

---

### NORTHERN DISTRICT—SUNBURY 1869.

---

## Waters *versus* Margerum.

1. A testator directed his executors to purchase a lot on which he held a mortgage if necessary to secure the debt and in their discretion to sell it, pay part of the proceeds to certain legatees, invest the remainder, and pay the interest to a legatee for life and after her death to her children " perpetually." Administrators *d. b. n. c. t. a.* could not execute the power to sell.

2. Administrators *c. t. a.* may execute a power to sell to bring land into a course of administration, but not to carry out a collateral purpose, *e. g.* to turn it into money for convenience of partition.

3. The grantee of a tenant in tail of all his estate takes a base fee liable to be defeated on his death by the entry of the issue.

4. Though the tenant in tail part with the land for his life by a deed of bargain and sale or the sheriff sell it on an execution, still he continues seised of an estate of inheritance.

5. Ross *v.* Barclay, 6 Harris 183, remarked on.

January 25th 1869, at Philadelphia. Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ. READ and WILLIAMS, JJ., absent.

Error to the Court of Common Pleas of *Columbia county:* To October Term 1868.

This was an action of ejectment for lot No. 8 in the town of Catawissa, commenced September 15th 1866, by Samuel Waters against C. E. Margerum.

The questions in this ejectment arose under the will and codicil of George Knoppenberger, both dated April 26th 1818, and proved March 12th 1819. Amongst other things he devised as follows, viz. :—

" Secondly. Whereas I now hold an indenture of mortgage duly

[Waters *v.* Margerum.]

executed by Henry Feder of Catawissa township, on a certain house and lot situate on the corner of Main and Front streets, in the said town of Catawissa, and also a grass lot situate on the Main street and lying between Water and Front streets, together with the right of ferrying over the river Susquehanna which is attached to said grass lot, which mortgage I hold in security of the purchase-money for said house and lots, from the said Henry Feder, and which has now become due, and as there is no prospect of the said Henry Feder paying the money in discharge of said mortgage and the obligations therein mentioned, the said corner house and lots with the right of ferrying as aforesaid, will in all probability be sold by the sheriff, it is therefore my will, that my executors, hereinafter named, shall attend the sale of said house and lots, and if they be not likely to be purchased by any others for near their value, or for a sum sufficient to discharge the said mortgage, it is then my will and wish, that my said executor purchase the same to be disposed of as a part of my estate as hereinafter mentioned, and if they should purchase the said house and lots I then leave it at the discretion of my said executors whether to sell the same again at private sale or not, hoping they will act such a part as will be most conducive to the interest of the estate, and if my said executors should think it most advisable to sell said house and lots, provided they should purchase them at sheriff's sale, I hereby give them full power and authority to sign, seal and deliver a sufficient deed or deeds of conveyance for the same, to the purchaser or purchasers thereof in fee simple.

"Thirdly. If the aforesaid mortgaged house and lots be purchased at sheriff's sale by any person or persons other than my said executors, or if it be purchased by them and sold again, it is then my will, that of the money arising from the sale thereof the sum of one hundred dollars, lawful money, be paid to my said wife for her own use and support, that the sum of one hundred dollars be paid to the said Catharine Waters, her heirs and assigns, and the sum of one hundred dollars thereof I order and direct my said executors to put out at interest for the use of the said George Knoppenberger Waters to be paid to him, his heirs and assigns, when he shall arrive at the age of twenty-one, and fifty dollars thereof I direct to be paid into the hands of the trustees of the St. John's Church at Catawissa for the use of the said church, to be applied at the discretion of the trustees thereof.

And all the remainder after the deduction and appropriation of the aforesaid three hundred and fifty dollars as aforesaid, I direct my said executors to place out at interest, either in the bank or otherwise, to remain at interest perpetually, which interest I direct to be paid unto the said Catharine Waters annually during her natural life, and at her decease I direct the said interest to be paid to her children share and share alike, and to their heirs and to

the heirs of those heirs, &c., from generation to generation per-
petually.

"Fourthly. But if my said executors should purchase said house
and lots, and should not have an opportunity to sell them for such
a price as to render the sale thereof more advantageous to the
estate than to keep them, and if they therefore should not be sold,
I then give and bequeath out of the rents and incomes of the same,
the sum of ten pounds, lawful money, unto my said wife annually
during her life, and the remainder of the rents and incomes I give
and bequeath unto the said Catharine Waters, and at the decease
of my said wife I give the whole of the said rents and incomes
unto the said Catharine Waters during her life, and at her decease
I give the same unto her children share and share alike, and to
their heirs and to the heirs of those heirs, &c., from generation to
generation perpetually.

"Fifthly. If the said house and lot be purchased by my said
executors as mentioned in the second clause of this will, it is my
will that the rents and incomes thereof from the time possession
thereof can be had, be appropriated as directed in the fourth
clause, and if they should at any time be sold, it is my will, that
when they are sold, the money arising from the sale be appro-
priated as directed in the third clause thereof."     *     *     *

Codicil. "If the said Catharine Waters should have no more
children and the said George Knoppenberger Waters should die
without issue, or if it should at any time happen that the said
Catharine Waters and all her offspring decease, so that there
remain no more heirs to the above devised estate as mentioned in
the above will, it is then my will that all the said estate descend
to the trustees of the St. John's Church at Catawissa, to be appro-
priated by them to the use of the said church at their discretion,
excepting one hundred dollars thereof, which I direct to be applied
to the schooling of poor children that shall be born in the said
township of Catawissa." Letters testamentary were granted to
Catharine Waters, one of the executors named in the will.

The lot in dispute is that which was covered by the mortgage
from Henry Feder. On the 3d of August 1819, the executrix
of Knoppenberger sued out the mortgage against Feder, and the
lot was sold at sheriff's sale, and conveyed to her November 8th
1820. The widow of the decedent died some time after the sale.
Catharine Waters entered into possession of the lot and died
about 1836, leaving three children, George K. and Aaron Waters
by one husband, and Catharine Goodrich by another husband.
Catharine Goodrich died in 1843 intestate, unmarried and without
issue. Under a fieri facias to November Term 1846, George
Waters's interest in lot No. 8 was sold and conveyed by the
sheriff to Benjamin J. Frick September 26th 1846. Under a
venditioni exponas to April Term 1847 Aaron Waters's interest

in the lot was sold and conveyed by the sheriff to Joseph Paxton April 22d 1847. The title under these sheriff's sales is vested in Catawissa Bridge Company, under whom the defendant is in possession. Aaron Waters died in November 1863, intestate, unmarried and without issue. On the 19th of July 1866 letters of administration *d. b. n. c. t. a.* on the estate of George Knoppenberger were issued to George K. Waters, who, as such administrator, conveyed lot No. 8 to Samuel Waters, the plaintiff, on the 21st of the same month. G. K. Waters, on the same day also, made a deed of the lot to the plaintiff for the purpose of barring the entail; this deed was by direction of the court recorded September 4th 1866.

The court (Elwell, P. J.) after stating the facts, which were undisputed, charged:—

" No title was acquired by the plaintiff by the deed of 21st July 1866, from the administrator *de bonis non*, with the will of George Knoppenberger annexed. The executors were authorized to sell if *they* thought advisable to do so, not for the purpose of paying debts, but of investing the proceeds in *trust* for the parties named. The Act of 1834 does not confer upon the administrator with the will annexed, power to execute a trust, other than for the payment of debts, when the real estate is to be brought into a course of administration. In this case there was a *discretion* to be exercised by the executors, but even they were not authorized to sell after the death of the testator's wife; certainly not after the death of Catharine Waters. The title in equity was then vested in the devisees, and the direction as to investments and payment of proceeds could not be carried out.

" The questions of law arising under the will are both interesting and intricate, but as there are no disputed facts, and the conclusions at which the court has arrived in construing the will disposes of the whole case, it would be profitless to discuss the principles, or refer to the authorities which induce those conclusions.

" We hold and so instruct the jury, that Catharine Waters, at the death of testator's wife, had by the will an estate for life in this lot remainder to her children living at her death in fee simple.

" The word children, as used in the will, is a word of purchase and not of limitation. The property, if more than one child, was to be distributed among them, ' share and share alike'—it was directed to go to their heirs severally and generally, not to the heirs of their body. There is no devise over to the others in case one should die without issue. There is no remainder limited to the heirs of Catharine Waters *as such*. The remainder over has reference to a failure of issue in the life of the first taker, and of the kind of issue before mentioned, to wit, ' children.'

" The children of Catharine Waters constituted the stock of a

[Waters v. Margerum.]

new inheritance—the root of a new succession. After the death of the tenant for life, title to the inheritance could be obtained only by acquisition of their interest.	*	*	*	*

"Catharine Goodrich's estate, under the intestate laws, as she died without issue, became vested in her brothers, George and Aaron, whose title became divested by the judicial sales in 1846 and 1847. The title of the purchasers at those sales is now held, in whole or in part, by the Catawissa Bridge Company, under whom the defendant claims to hold possession.

"The plaintiff claims title by deed from George K. Waters, dated the 21st July 1866. But as George K. Waters did not acquire any right or title to the lot in question after the sale and conveyance of his interest therein by the sheriff in 1846, he had no title to convey, and the plaintiff has failed to establish either title or right of possession in the property. Upon the whole case, therefore, the verdict of the jury should be for the defendant."

The verdict was for the defendant. The plaintiff took a writ of error, and in a number of specifications assigned the charge of the court for error.

*S. Knorr*, for plaintiff in error.—"Children," "issue" and "heirs" are habitually used interchangeably as words of limitation to effect the intention of the testator: Bradon *v.* Cannon, 1 Grant 65. The words from "generation to generation" give estates tail to the devisees: Gause *v.* Wiley, 4 S. & R. 509. Superadded words importing the same course of descent are inoperative: Hileman *v.* Bouslaugh, 1 Harris 345. "Offspring" is a word of limitation: Allen *v.* Markle, 12 Casey 117. The sheriff's sale did not so divest George Waters's title that he could not afterwards bar the entail: Elliott *v.* Pearsal, 8 W. & S. 38.

*E. H. Baldy*, for defendant in error.—An administrator with the will annexed cannot execute a power to sell land except to pay debts: Ross *v.* Barclay, 6 Harris 183. Catharine Waters took an estate for life with remainder to her children: Corte *v.* Von Bonnhorst, 5 Wright 251; 2 Powell on Dev. 495, note *q;* Guthrie's Appeal, 1 Wright 14; Hayes on Estate Tail 35; Powell *v.* Board of Missions, 13 Wright 47. The children took as purchasers: Hileman *v.* Bouslaugh, 1 Harris 345; Carter *v.* McMichael, 10 S. & R. 429; Paxton *v.* Lefferts, 3 Rawle 59; McIntyre *v.* Ramsey, 11 Harris 317. "Offspring" in this will refers to Catharine's descendants, not to her children's. She took but a life estate: Sheets's Estate, 2 P. F. Smith 258; Curtis *v.* Longstreth, 8 Wright 302. Cross-remainders are not favored: Simpson *v.* Coon, 4 S. & R. 373; Cooper *v.* Jones, 3 Barn. & Ald. 425.

[Waters *v.* Margerum.]

The opinion of the court was delivered, February 4th 1869, by
SHARSWOOD, J.—The deed by George K. Waters, administrator *de bonis non* with the will annexed of George Knoppenberger, unquestionably conveyed no title to the plaintiff. The power to sell given by the will to the executors was not for the payment of debts, but for distribution among legatees and for investment. Ross *v.* Barclay, 6 Harris 183, decides that such an administrator, under the 67th section of the Act of February 24th 1834, Pamph. L. 86, may execute a power to sell in order to bring the land into a course of administration, but not to carry out a trust for a collateral purpose, such, for instance, as here, to turn it into money for convenience of partition.

If upon the true construction of the will and codicil of George Knoppenberger the children of Catharine Waters took an estate in remainder in fee simple after the death of their mother, the plaintiff confessedly had no title. Upon the death of Catharine Goodrich without children her share descended to her two half-brothers, George K. and Aaron Waters.

Aaron's interest was divested by the sheriff's sale in 1847 to Joseph Paxton, and the estate of George passed in 1864 to Benjamin J. Frick.

If the children of Catharine Waters took upon the death of their mother, estates tail, each in one undivided third, without cross-remainders, then upon the death of Catharine Goodrich without issue, her one-third vested in the trustees of St. John's Church, to whom was devised the ultimate remainder in fee: and so in like manner as to the share of Aaron upon his death without issue. Thus George would have been seised of one-third in tail, with remainder to St. John's Church in fee, and St. John's Church would have been seised in fee of the remaining two-thirds. The sheriff's sale in 1864 conveyed George's interest, and the vendee took an estate for the life of George at least in his one-third.

But conceding to the plaintiff all for which he contends, that Catharine Waters had an estate for life, remainder to her children as tenants in common in tail, and by force of the devise over in default of the issue of all of them, cross-remainders in tail by implication between them—remainder to St. John's Church in fee —then on the death of Catharine Goodrich without issue the remainder in tail in her share vested in George and Aaron, and on the death of Aaron without issue, the remainder in tail in that third as well as Catharine Goodrich's, in other words, in the moiety vested in George alone, so that he thus became seised in tail in the whole, remainder to St. John's Church in fee.

Being so seised, the sheriff's deed conveyed his life interest in the entirety to Benjamin J. Frick in 1864.

What, indeed, the exact interest of the grantee was, is a question now more of curiosity than of any practical importance.

[Waters v. Margerum.]

Littleton (§ 613) states distinctly that the grantee of tenant in tail of all his estate hath no other estate but for term of life of the tenant in tail.   Mr. Butler, in his note, says that this is not to be understood literally, that the grantee has but an estate for life, and that his estate is *ipso facto* determined by the death of the tenant in tail; for upon the death of the tenant in tail, it is defeasible by the issue.   Still it has continuance till it is so defeated: Co. Litt. 331 a, note 286.   Littleton's opinion was adopted and followed in the case of Tooke v. Glasscock, 1 Saund. 250. The contrary, however, was ruled in an elaborate opinion by Lord Holt in Machell v. Clarke, 2 Salk. 619, 7 Mod. 18, Com. 118, 2 Lord Raym. 778, Holt 615, and that decision has been since adhered to, as Sergeant Williams admits, 1 Saund. Rep. 260, note 1, Stapleton v. Stapleton, 1 Atk. 8, Goodright v. Mead, 3 Burr. 1703, and the most celebrated text-writers agree: 1 Preston on Estates 436, 1 Preston on Abstracts 363, Butler's note to Co. Litt. 331 a: so that the grantee of tenant in tail of all his estate takes a base fee, according to these authorities, liable to be defeated on the death of the tenant in tail by the entry of the issue.   So the law is stated by President Wilson in his charge in Gause v. Wiley, 4 S. & R. 513.   It was held, however, by this court in Elliott v. Pearsall, 8 W. & S. 38, that a sheriff's sale of an estate of a tenant in tail does not so divest him of the inheritance that he may not afterwards execute a deed in pursuance of the Act of Assembly of January 16th 1799, 3 Smith 338, for the purpose of barring the issue in tail.   It is considered in that case that though the tenant in tail may part with the enjoyment of the land during his life by a deed of bargain and sale, or the sheriff may sell it on an execution, still he continues to be seised of the inheritance.   It is clear, however, beyond any reasonable doubt, that if George K. Waters was tenant in tail, an indefeasible estate for his life passed by the deed of the sheriff to his vendee; and as George K. Waters at the time of the trial below was still in full life, such an estate has vested in his vendee, or those claiming under him.

*Quacunque viâ data*, then, the plaintiff had no right to the possession, and no title to recover in ejectment.   It is not our duty to give any opinion as to what estate the children of Catharine Waters took under the will and codicil of George Knoppenberger, as the determination of that question is not necessary to the decision of the case before us.

Judgment affirmed.